## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES WATSON,** | : | |
| **Petitioner** | : | |
| | : | **No. 24-cv-00775** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **TOM MCGINLEY,[1] et al.,** | : | |
| **Respondents** | : | |

### MEMORANDUM

Before the Court are pro se Petitioner James Watson ("Watson")'s two (2) applications for leave to proceed in forma pauperis, a petition for a writ of habeas corpus under 28 U.S.C. § 2254, four (4) motions to dismiss his underlying criminal charges, a "Motion to Charge," and two (2) "Petition[s] to Dismiss Information Pursuant of [sic] Best Evidence Rule."  For the reasons set forth below, the Court will grant Watson leave to proceed in forma pauperis, dismiss the habeas petition, deny Watson's petitions to dismiss, and deem Watson's other motions as withdrawn due to his failure to file supporting briefs in accordance with this Court's Local Rules.

## I.   BACKGROUND

On December 29, 2023, Watson pleaded nolo contendere to charges of criminal solicitation of indecent assault of a person less than sixteen (16) years of age (18 Pa. C.S. § 902(a)) and criminal solicitation of corruption of minors in the Court of Common Pleas of

---

[1]  The Court has substituted Tom McGinley, the Superintendent of Pennsylvania State Correctional Institution Coal Township, the place where Petitioner is currently incarcerated, see (Doc. No. 1 at 1), as one of the two (2) Respondents in this case.  See R. 2(a), 28 U.S.C. foll. § 2254 (requiring habeas petitioner's current custodian to be named as respondent); Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 494–95 (1973) ("The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds [them] in what is alleged to be unlawful custody.").

Wyoming County.  (Doc. No. 1 at 1.)[2]  On the same date, he was sentenced to an aggregate

sentence of incarceration for a minimum of eleven (11) months to a maximum of sixty (60)

months.  (Id.); see also Docket.  Watson did not appeal from his judgment of sentence to the

Pennsylvania Superior Court.[3]  Instead, it appears that the only action he took after his

sentencing was to file a pro se motion to dismiss charges on April 5, 2024, which the trial court

denied on April 12, 2024.  See Docket.

On May 6, 2024, Watson filed the instant petition for a writ of habeas corpus under 28

U.S.C. § 2254, along with an application for leave to proceed in forma pauperis ("IFP

Application") and a certified prison trust fund account statement.[4]  (Doc. Nos. 1–3.)  Watson

includes several claims in his habeas petition.  (Doc. No. 1 at 1–9.)  First, Watson asserts that his

trial counsel was ineffective because they failed to (1) use Watson's "supporting evidence," (2)

show him certain evidence he had repeatedly requested to review, and (3) did not raise other

criminal cases in Clearfield County which were dismissed "for not having victims."  See (id. at

5).  Second, Watson argues that his charges cannot be supported because there was no actual

---

[2]  The Court takes judicial notice of the docket sheet in Watson's criminal case, which is available through the Unified Judicial System of Pennsylvania Web Portal at https://ujsportal.pacourts.us/CaseSearch ("Portal").  See Commonwealth v. Watson, No. CP-66-CR-0000123-2023 (Wyoming Cnty. Ct. Com. Pl. June 8, 2023) ("Docket").

[3]  On the form Section 2254 petition, Watson checks the box for having filed an appeal to the Superior Court.  (Doc. No. 1 at 2.)  However, he claims that the Superior Court told him that it could not "help" him and "to stop writing."  See (id.)  Neither the docket sheet for Watson's criminal case nor the Portal for the Superior Court show that he ever filed an appeal to the Superior Court.

[4]  The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk."  See Houston v. Lack, 487 U.S. 266, 276 (1988).  Here, Watson included a declaration indicating that he placed his petition in the prison mailing system on May 6, 2024.  (Doc. No. 1 at 14.)  As such, the Court uses May 6, 2024, as the petition's filing date.

victim, no DNA was taken from him to support the solicitation of indecent assault charge, and he never saw the victim's account of what was stated to support the corruption of minors charge. (Id. at 6.) Third, Watson asserts that "the Assistant District Attorney used the group to threaten and harass [him] and intimidate [him]." See (id. at 8). In this regard, he states:

> For all of 2023, since I was charged, Debra A Heise [sic] used the group to stalk, threaten, Bully [sic], follow, and took it to extreme [sic] by having water dumped in my tank, brakelines [sic] cut[.] They illegally tapped my phone even steal [sic] my mail and give them the addresses to my house an [sic] my jobs[.] They followed me like a wounded deer. I have pictures on a phone of their vehicles even of Brian Knepp himself.

See (id.). Finally, Watson contends that "Debra A. Hiese" ("Hiese") "abused" her power by having him followed and harassed, which he appears to claim constituted entrapment. See (id. at 9). For relief, Watson seeks his release from prison, reimbursement for his pain and suffering, an order that he not be placed on the sex offender registry, and $500,000 "for my loss of my life." See (id. at 14).

Over the past several months, Watson has filed several other documents with the Court. In June 2024, Watson filed a second application for leave to proceed in forma pauperis. (Doc. No. 7.) He also filed a motion seeking to have the Court dismiss (1) "the text messages [in his case] due to lack of origin"; (2) his criminal solicitation of indecent assault conviction because of "not having a victim [and] not having any evidence to support the charge of indecent assault"; and (3) his criminal solicitation of corruption of a minors because there was no "solid evidence to support the charge" as well as no victim. See (Doc. No. 8 at 1). He then filed another motion to have the Court dismiss the charges against him, direct that he be released from prison, and order that his criminal convictions be expunged. (Doc. No. 9 at 1.)

In July 2024, Watson filed a "Motion to Charge" in which he sought to have the Court charge Hiese with tampering with evidence, falsifying reports, and hindering evidence. See (Doc.

No. 12 at 1).  In this motion, Watson also requested that the Court impose restitution on Hiese in the amount of $1,200 for each day he has been incarcerated (which was 222 days at the time he filed the motion).  (Id.)  In addition to his "Motion to Charge," Watson filed two motions in which he requested that the Court dismiss the charges against him for lack of evidence (Doc. Nos. 16, 18) and numerous letters (Doc. Nos. 11, 13–15, 17, 19–22).

In August 2024, Watson filed a "Petition to Dismiss Information Pursuant of [sic] Best Evidence Rule."  See (Doc. No. 23).  In this petition, Watson again seeks to have the Court dismiss his underlying criminal charges.  (Id. at 1.)  While somewhat unclear, it appears that Watson seeks this relief based on the prosecutor's inability to show that the text messages involved in his case were authentic.  (Id.)

On September 12, 2024, Watson filed another Petition to Dismiss Information Pursuant of [sic] best [sic] Evidence Rule."  (Doc. No. 25.)  This second petition is very similar to his prior petition, and it again appears that Watson is seeking dismissal of his underlying criminal charges due to insufficient evidence.  (Id. at 1–2.)

## II.    DISCUSSION

### A.    The IFP Application

Under 28 U.S.C. § 1915(a)(1), the Court "may authorize the commencement . . . of any suit, action or proceeding, civil or criminal, . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."  See id.  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts."  Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files

> a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris v. Middletown Twp., 293 F. App'x 130, 131–32 (3d Cir. 2008) (unpublished) (footnote omitted).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a showing of indigence."  See Deutsch, 67 F.3d at 1084 n.5.  The Third Circuit Court of Appeals has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'"  See Mauro v. N.J. Supreme Ct., Case No. 56,900, 238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948)).  Some district courts have explained that all a litigant needs to show is that because of their poverty, they cannot afford to pay for the costs of the litigation and provide themselves with the necessities of life.  See, e.g., Rewolinski v. Morgan, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v. State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

Here, after reviewing the IFP Application and certified prison trust fund account statement, it appears that Watson is unable to pay the costs of this habeas action.  Therefore, the court will grant the IFP Application, allow Watson leave to proceed in forma pauperis in this action, and deny his second in forma pauperis application as moot.

B.      **Watson's Habeas Claims**

The Court has screened this Section 2254 habeas matter pursuant to Rule 4 of the Rules

Governing Section 2254 Cases in the United States District Courts.  See R. 4, 28 U.S.C. foll. §

2254 ("If it plainly appears from the petition and any attached exhibits that the petitioner is not

entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to

notify the petitioner.").  As explained below, it plainly appears that Watson's habeas petition

should be dismissed because his claims are either unexhausted or procedurally defaulted.

1.      **Legal Standards – Exhaustion and Procedural Default**

A Section 2254 habeas petitioner must first exhaust any state court remedies before filing

a habeas petition in federal court: "It is axiomatic that a federal court may not grant a petition for

a writ of habeas corpus unless the petitioner has first exhausted the remedies available in the

state courts."  See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (Lambert I) (citation

omitted); see also 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf

of a person in custody pursuant to the judgment of a State court shall not be granted unless it

appears that—(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or (ii) circumstances exist that

render such process ineffective to protect the rights of the applicant.").  A federal court may

consider a habeas petition only after the petitioner "'fairly present[s' their] claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim."  See Baldwin v. Reese, 541 U.S.

27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365–66 (1995)).  In other words, to fully

exhaust their state remedies, a habeas petitioner must invoke "one complete round of the state's

established appellate review process."  See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999);

see also 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").  In Pennsylvania, "one complete round" includes presenting the federal claim through the Superior Court on direct or collateral review.  See Lambert v. Blackwell, 387 F.3d 210, 233–34 (3d Cir. 2004).  The petitioner generally bears the burden to prove all facts establishing that they fully exhausted their state remedies.  See Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993) ("The habeas petitioner bears the burden of proving that he has exhausted available state remedies." (citations omitted)).

Habeas petitioners must exhaust state remedies because exhaustion "addresses federalism and comity concerns by afford[ing] the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." See Lambert I, 134 F.3d at 513 n.18 (citation and internal quotation marks omitted).  Therefore, although the exhaustion requirement is a comity concern and not a jurisdictional concern, it "should be strictly adhered to because it expresses respect for our dual judicial system." See Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir. 1992) (citation omitted).  In addition, "[e]qually as important, federal claims that have been fully exhausted in state courts will more often be accompanied by a complete factual record to aid the federal courts in their review." See Rose v. Lundy, 455 U.S. 509, 519 (1982).

If a petitioner has failed to exhaust their habeas claims by failing to "fairly present" them to the state courts, the district court must ordinarily dismiss the petition without prejudice to the petitioner returning to state court to exhaust their remedies.  See Slutzker v. Johnson, 393 F.3d 373, 379 (3d Cir. 2004) ("Under the doctrine of Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9

7

L.Ed.2d 837 (1963), and <u>Rose v. Lundy</u>, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), federal courts must dismiss without prejudice habeas petitions that contain any unexhausted claims."); <u>see also</u> <u>Gerber v. Varano</u>, 512 F. App'x 131, 135 (3d Cir. 2013) (unpublished) (indicating that "[s]tay and abey is available even when a petitioner has exhausted none of the claims in [their] petition").  If, however, the petitioner may no longer seek relief on their claims in state court because of a state's procedural rules, the claims are procedurally defaulted.  <u>See</u> <u>McCandless v. Vaughn</u>, 172 F.3d 255, 260 (3d Cir. 1999).  A state's procedural rules are entitled to deference by federal courts; as such, a petitioner's violation of a state procedural rule may constitute an "independent" and "adequate" state-law ground for denial of federal review of habeas claims under the procedural default doctrine.  <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991) ("This Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.").[5]  Furthermore, "violations of a state's procedural rules may constitute an independent and adequate state ground sufficient for a district court to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising their claims."  <u>See</u> <u>Paul v. Britton</u>, No. 08-cv-02078, 2012 WL 3536798, at *4 (M.D. Pa. Aug. 14, 2012) (citing <u>Glass v. Vaughn</u>, 65 F.3d 13, 15 (3d Cir. 1995), <u>cert. denied</u>, 516 U.S. 1151 (1996)).

---

[5]  As with exhaustion, without a doctrine of procedural default, principles of comity and federalism would be disrupted because "habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases."  <u>See</u> <u>Edwards v. Carpenter</u>, 529 U.S. 446, 452–53 (2000).

Concerning the requirements that a state's procedural rule be independent and adequate for the application of procedural default:

> The[se] requirements . . . are distinct.  Johnson v. Pinchak, 392 F.3d 551, 557–59 (3d Cir. 2004).  State procedural grounds are not independent, and will not bar federal habeas relief, if the state law ground is so "interwoven with federal law" that it cannot be said to be independent of the merits of a petitioner's federal claims. Coleman, 501 U.S. at 739–40.  A state rule is "adequate" for procedural default purposes if it is "firmly established and regularly followed."  Johnson v. Lee, 578 U.S. 605, 606 (2016) (per curiam) (citation omitted); see also Kellam v. Kerestes, No. 13-6392, 2015 WL 2399302, at *4 (E.D. Pa. May 18, 2015) (citations omitted). These requirements ensure that "federal review is not barred unless a habeas petitioner had fair notice of the need to follow the state procedural rule," Bronshtein v. Horn, 404 F.3d 700, 707 (3d Cir. 2005), and that "review is foreclosed by what may honestly be called 'rules' . . . of general applicability[,] rather than by whim or prejudice against a claim or claimant."  Id. at 708.

See Reid v. Mason, No. 22-cv-01798, 2023 WL 9778934, at *6 (E.D. Pa. Dec. 20, 2023), report and recommendation adopted, 2024 WL 733565 (E.D. Pa. Feb. 22, 2024) (alterations other than first two alterations in original).

If exhaustion is futile due to an independent and adequate state-law procedural rule, the district court may only reach the merits of the procedurally defaulted claim if the petitioner demonstrates "cause and prejudice" or a "fundamental miscarriage of justice."  See Lines v. Larkins, 208 F.3d 153, 166 (3d Cir. 2000); see also Coleman, 501 U.S. at 750 (1991) (explaining that a procedural default can be excused if petitioner can show cause for the procedural default and actual prejudice arising therefrom, or that a fundamental miscarriage of justice will result if the claim is not considered).  A habeas petitioner can demonstrate cause for procedural default if they can show that some objective factor external to the defense impeded or prevented their ability to comply with the state procedural rules.  See Caswell, 953 F.2d at 862.  The cause must be "something that cannot fairly be attributed to [the petitioner]."  See Coleman, 501 U.S. at 753. To show prejudice, the petitioner must present evidence that this factor did more than merely

create a possibility of prejudice; it must have "worked to [the petitioner's] <u>actual</u> and substantial

disadvantage."  <u>See</u> <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986) (quoting <u>United States v. Frady</u>,

456 U.S. 152, 170 (1982)).  As for the "fundamental miscarriage of justice" exception to

procedural default, it is concerned only with "actual" innocence, and the petitioner must show

that in light of new evidence it is more likely than not that no reasonable juror would have

convicted them absent the claimed error.  <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 327–28 (1995); <u>see</u>

<u>also</u> <u>Hubbard v. Pinchak</u>, 378 F.3d 333, 338 (3d Cir. 2004) (finding that credible allegation of

actual innocence constitutes miscarriage of justice that enables federal court to hear merits of

otherwise procedurally defaulted habeas claims), <u>cert. denied</u>, 543 U.S. 1070 (2005).

    **2.**    **Analysis**

    As stated above, Watson was sentenced on December 29, 2023.  At that point, he had two

options:  First, he could have filed a post-sentence motion under Pennsylvania Rule of Criminal

Procedure 720 with the trial court within ten (10) days after the imposition of his sentence.  <u>See</u>

Pa. R. Crim. P. 720(A)(1).  If he filed a post-sentence motion, the trial court would have had one

hundred and twenty (120) days to resolve the motion, unless the trial court granted an extension

for decision on the motion.  <u>See</u> Pa. R. Crim. P. 720(B)(3)(a).  The trial court can only grant one

such extension and said extension cannot be for more than thirty (30) days.  <u>See</u> Pa. R. Crim. P.

720(B)(3)(b) ("Upon motion of the defendant within the 120-day disposition period, for good

cause shown, the judge may grant one 30-day extension for decision on the motion.").  If the trial

court did not resolve the post-sentence motion within the no-longer-than one hundred and fifty

(150) day period, the post-sentence motion would have been deemed denied by operation of law.

See id. ("If the judge fails to decide the motion within the 30-day extension period, the motion shall be deemed denied by operation of law.").[6]

Second, Watson could have filed a direct appeal to the Superior Court within thirty (30) days "of the imposition of the judgment of sentence in open court."  See Pa. R.A.P. 903(c)(3) ("In a criminal case in which no post-sentence motion has been filed, the notice of appeal shall be filed within 30 days of the imposition of the judgment of sentence in open court.").  If Watson had filed a post-sentence motion, he would have had thirty (30) days from the decision on the motion (either via a decision by the trial court or a denial by operation of law) to file a notice of appeal to the Superior Court.  See Pa. R. Crim. P. 720(A)(2)(a)–(b) ("If the defendant files a timely post-sentence motion, the notice of appeal shall be filed: (a) within 30 days of the entry of the order deciding the motion; [or] (b) within 30 days of the entry of the order denying the motion by operation of law in cases in which the judge fails to decide the motion . . . .").

Here, Watson did not file a post-sentence motion within ten (10) days of the imposition of his sentence on December 29, 2023, or an appeal to the Superior Court within thirty (30) days after the imposition of his sentence.  See (Doc. No. 1 at 2); Docket.  Therefore, his judgment of sentence became final on January 30, 2024, the day after the expiration of his thirty (30)-day period to file an appeal to the Superior Court.[7]  Moreover, any issues that Watson needed to raise

---

[6]  Similarly, if the trial court did not grant an extension of time to resolve the post-sentence motion and did not resolve the motion within one hundred and twenty (120) days, the motion would be deemed denied by operation of law.  See Pa. R. Crim. P. 720(B)(3)(a) ("Except as provided in paragraph (B)(3)(b), the judge shall decide the post-sentence motion, including any supplemental motion, within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law.").

[7]  Because the thirtieth (30th) day for Watson to file a direct appeal expired on Sunday, January 28, 2024, he would have had until Monday, January 29, 2024, to file a direct appeal.  See 1 Pa. C.S. § 1908 ("When any period of time is referred to in any statute, such period in all cases, . . .

on direct appeal are waived because he did not file a direct appeal.  See Commonwealth v. Mitchell, 445 A.2d 721, 722–23 (Pa. 1982) (explaining that issues not raised on direct appeal are waived); Commonwealth v. Turetsky, 925 A.2d 876, 879 (Pa. Super. Ct. 2007) (concluding that because "Appellant's first two issues could have been raised in a direct appeal, [and] since no direct appeal was taken, they are both deemed waived").  Thus, the Court turns to whether Watson needed to first assert any of the claims he raises in his current habeas petition on appeal to the Superior Court.

Among the issues Watson raises in his habeas petition are two (2) claims that sound like prosecutorial misconduct claims, i.e., that the Assistant District Attorney threatened, harassed, and intimidated him; and that the Assistant District Attorney abused her power by entrapping him.  (Doc. No. 1 at 8–9.)  Also, while somewhat unclear, it appears that Watson raises one (1) claim in which he challenges the sufficiency of the evidence that formed the basis for the charges against him.  (Id. at 6.)  These three (3) claims are waived for two (2) reasons.

First, Watson waived these claims when he entered a nolo contendere plea to both criminal solicitation charges.  A nolo contendere plea is treated like a guilty plea in Pennsylvania. See Commonwealth v. Prieto, 206 A.3d 529, 533 (Pa. Super. Ct. 2019) ("[I]n terms of its effect upon a case, a plea of nolo contendere is treated the same as a guilty plea.").  "Upon entry of a guilty plea [in Pennsylvania], a defendant waives all claims and defenses other than those sounding in the jurisdiction of the court, the validity of the plea, and what has been termed the 'legality' of the sentence imposed."  Commonwealth v. Eisenberg, 98 A.3d 1268, 1275 (Pa.

---

shall be so computed as to exclude the first and include the last day of such period. Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.").

2014).  Therefore, Watson waived any claims regarding the sufficiency of the evidence in support of the charges against him and prosecutorial misconduct by the Assistant District Attorney when he entered his <u>nolo contendere</u> plea.  <u>See</u> <u>Commonwealth v. Rounsley</u>, 717 A.2d 537, 539 (Pa. Super. Ct. 1998) ("It is well established that any issue relating to sufficiency of the evidence is waived by entry of a guilty plea . . . ."); <u>Commonwealth v. Rogers-Jordan</u>, No. 1556 MDA 2019, 2020 WL 3172666, at *3 (Pa. Super. Ct. June 15, 2020) (unpublished) ("[A]ppellant waived his right to raise a claim of prosecutorial misconduct when he entered a guilty plea.").

Second, even if those three (3) habeas claims were not waived by virtue of his <u>nolo contendere</u> plea, he waived those claims by failing to raise them on direct appeal because he cannot assert them for the first time in a petition for post-conviction relief under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. §§ 9541–46 ("PCRA").  <u>See</u> <u>Rounsley</u>, 717 A.2d at 539 (pointing out that a challenge to the sufficiency of the evidence "is not subject to attack in a post conviction proceeding"); <u>Commonwealth v. Rose</u>, No. 1982 EDA 2022, 2024 WL 2270252, at *10 (Pa. Super. Ct. May 20, 2024) (unpublished) ("[A] claim of prosecutorial misconduct is not cognizable under the PCRA." (citing <u>Commonwealth v. Wholaver</u>, 177 A.3d 136, 174 (Pa. 2018))).  The PCRA prohibits a petitioner from raising a claim in a PCRA petition if the claim has "been previously litigated or waived."  <u>See</u> 42 Pa. C.S. § 9543(a)(3).  The PCRA also provides that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding."  <u>See</u> <u>id.</u> § 9544(b).

"The waiver rule codified at § 9544(b) is an independent and adequate state rule which bars federal habeas review."  <u>Hendrickes v. Warden, SCI-Muncy</u>, No. 23-cv-00797, 2024 WL 2094017, at *4 (M.D. Pa. May 9, 2024) (citing <u>Patton v. Superintendent Graterford SCI</u>, No. 17-

cv-02142, 2017 WL 5624266, at *1 (3d Cir. Sept. 28, 2017) (unpublished)).  Similarly, the state-law rule that a criminal defendant waives most claims by pleading guilty or nolo contendere is also "an 'independent' and 'adequate' state rule which is 'firmly established, readily ascertainable, and regularly followed.'"  Reddy v. SCI Somerset, No. 18-cv-00748, 2018 WL 6834728, at *7 n.3 (E.D. Pa. Oct. 2, 2018) (citing Leyva v. Williams, 504 F.3d 357, 366 (3d Cir. 2017); Eisenberg, 98 A.3d at 1275), report and recommendation adopted, 2018 WL 6830990 (E.D. Pa. Dec. 27, 2018).

To the extent that Watson believed that there was insufficient evidence or prosecutorial misconduct, it was incumbent on him to preserve those claims with the trial court and on direct appeal.  Because he did not do so, and pleaded nolo contendere, those claims are waived and procedurally defaulted.  Further, Watson has not included any assertions in his habeas petition that would show cause and prejudice or a fundamental miscarriage of justice to excuse this procedural default.  Accordingly, the Court concludes that Watson's habeas claims of prosecutorial misconduct and sufficiency of the evidence are procedurally defaulted.

As for Watson's ineffective assistance of counsel claim, it is unexhausted.  Under the PCRA, a criminal defendant generally has "one year of the date the judgment becomes final" to file a PCRA petition.  See 42 Pa. C.S. § 9545(b)(1).  Since Watson's judgment became final on January 30, 2024, he technically has until January 30, 2025 to file a PCRA petition.  While the Court expresses no opinion on the viability of Watson's ineffective assistance of counsel claim, it is a type of claim properly raised on collateral review instead of on direct appeal.  See Commonwealth v. James, 297 A.3d 755, 760 (Pa. Super. Ct. 2023) ("Generally a criminal defendant may not assert claims of ineffective assistance of counsel on direct appeal.  See Commonwealth v. Holmes, 621 Pa. 595, 79 A.3d 562, 577-80 (2013).  Instead, such claims are to

14

be deferred to PCRA review.  Id."), appeal denied, 309 A.3d 691 (Pa. 2023).  Because Watson

may still file a PCRA petition in which he raises a claim pertaining to the ineffective assistance

of his trial counsel, this claim is unexhausted, and the Court will dismiss it without prejudice.

See Slutzker, 393 F.3d at 379.

### C.      Watson's Claims for Damages

Watson includes claims for monetary relief in his habeas petition (Doc. No. 1 at 14),

which are not cognizable in a habeas petition.  The purpose of a writ of habeas corpus is to

secure release from unlawful detention.  See Hope v. Warden York County Prison, 972 F.3d 310,

323 (3d Cir. 2020).  Claims that do not attack the legality of a petitioner's detention are not

cognizable habeas corpus claims.  See Preiser v. Rodriguez, 411 U.S. 475, 494 (1973) (stating

that if a "prisoner is seeking damages, [they are] attacking something other than immediate or

more speedy release–the traditional purpose of habeas corpus" and that damages are not

appropriate or available in a habeas corpus case); see also Leamer v. Fauver, 288 F.3d 532, 542

(3d Cir. 2002) ("When read together, there is a logical and coherent progression of Supreme

Court jurisprudence clarifying when [42 U.S.C.] § 1983 is unavailable: whenever the challenge

ultimately attacks the 'core of habeas'—the validity of the continued conviction or the fact or

length of the sentence—a challenge, however denominated and regardless of the relief sought,

must be brought by way of a habeas corpus petition.  Conversely, when the challenge is to a

condition of confinement such that a finding in plaintiff's favor would not alter his sentence or

undo his conviction, an action under § 1983 is appropriate.").  As such, the Court will dismiss

Watson's claims for monetary damages without prejudice to him later filing a separate action

under Section 1983 if he decides to do so.  See LoDuca v. McGinley, No. 23-cv-01444, 2024 WL

436355, at *7–8 (M.D. Pa. Feb. 5, 2024) (determining that petitioner improperly sought

monetary damages as part of habeas petition and dismissing claim without prejudice to petitioner filing Section 1983 action).

### D.      Certificate of Appealability

A court should only issue a certificate of appealability ("COA") if "the applicant has made a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  If, however, the district court

> denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

See id.  Here, the Court concludes that reasonable jurists would find not the issues addressed in this Memorandum to be debatable.  Accordingly, the Court will not issue a COA.

## III.    CONCLUSION

For the reasons stated above, the Court will: (1) grant the IFP Application; (2) deny Watson's second in forma pauperis application as moot; (3) dismiss Watson's Section 2254 habeas petition generally, with Watson's ineffective assistance of counsel claim being dismissed without prejudice to Watson pursuing the claim in the Pennsylvania state courts; (4) deem Watson's four motions to dismiss and his "Motion to Charge" as withdrawn due to his failure to file any supporting briefs, see M.D. Pa. L.R. 7.5 ("Within fourteen (14) days after the filing of any motion, the party filing the motion shall file a brief in support of the motion. . . . If a supporting brief is not filed within the time provided in this rule the motion shall be deemed to

16

be withdrawn."); (5) deny Watson's two (2) petitions to dismiss as moot; (6) not issue a COA;

and (7) direct the Clerk of Court to close this case.  An appropriate Order follows.


s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania